**Electronically Filed
Intermediate Court of Appeals
29340
11-MAY-2011
08:44 AM**

NO. 29340

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


BONNIE MACLEOD KAKINAMI, Plaintiff-Appellee, v.
AARON K.H. KAKINAMI, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(FC-D NO. 06-1-0040)


SUMMARY DISPOSITION ORDER
(By:  Nakamura, C.J., Leonard and Ginoza, JJ.)

Defendant-Appellant Aaron K.H. Kakinami (**Aaron**),
appeals from the following orders of the Family Court of the
Fifth Circuit (**Family Court**): (1) the Supplemental Divorce Decree
re Division of Assets and Debts after Entry of Bifurcated Divorce
Judgment, entered on October 7, 2008 (**Supplemental Decree**); (2)
the Order Denying Defendant's Motion for Pre-Decree Relief,
entered on September 24, 2008; and (3) the Order on Plaintiff's
Motion to Compel Defendant to List Marital Residence for Sale,
entered on February 3, 2009.[1]

On appeal, Aaron raises the following points of error:
(1) the Family Court erred when it awarded Plaintiff-Appellee
Bonnie MacLeod Kakinami (**Bonnie**) certain inheritance-funded
accounts as Marital Separate Property; (2) the Family Court erred
when it failed to find that Bonnie dissipated marital assets

---

[1]     The Honorable Calvin K. Murashige presided.

during the pendency of the divorce; and (3) the Family Court erred when it entered an order purportedly modifying property distribution after Aaron's Notice of Appeal divested the Family Court of jurisdiction.

Upon a thorough review of the record and the briefs submitted by the parties, and having duly considered the issues and arguments raised on appeal, as well as any authorities relevant thereto, we resolve Aaron's contentions as follows:

(1) With the first point of error, Aaron challenges Findings of Fact (**FOFs**) 58, 60-63, 68, 76, 77, 80, 83, and 84, and Conclusions of Law (**COLs**) 2, 3, 8, 9, 11, and 12. Summarily stated, Aaron alleges that the Family Court clearly erred in entering these FOFs, which found that, with limited exceptions (the $60,000 gifts and their appreciation and the CalPlans Limited Partnership), Bonnie's investment accounts were funded by inheritances received by Bonnie after the parties married, titled by Bonnie in her own name, expressly classified by Bonnie as her separate assets, and maintained by sources other than one or both of the spouses. Based on its assessment of the credibility of the evidence presented (FOF 9), the Family Court concluded that Bonnie met her burden of proof in establishing that the accounts identified in FOF 8 were Marital Separate Property.

The challenged FOFs are supported by substantial evidence in the record, including Bonnie's testimony that when she received the inheritances, they were transferred into accounts titled solely in her name, the accounts were always kept separate, and neither she nor Aaron contributed any funds to them. Bonnie further testified that she expressly regarded the accounts as her separate property, that Aaron referred to them as "[h]er inheritance," and the accounts had "grown and shrunk" over the years through interest and dividends, not through marital efforts. In addition, Bonnie testified that the accounts were maintained by a third-party account manager who had longstanding

ties with Bonnie's family and acted as an investment advisor. He kept Bonnie informed as to the status of the accounts, made recommendations on investments, and obtained her consent. Bonnie always accepted his recommendations and never independently researched or investigated them. She testified, "At no time, for example, did I make any of the decisions about what should be bought or where it should go. . . . [W]hatever [the account manager's] recommendation was, I went with it." Although Aaron offered conflicting testimony, the Family Court found Bonnie's evidence to be more credible. Such a credibility determination lies in the sole province of the Family Court. Schiller v. Schiller, 120 Hawai'i 283, 305, 205 P.3d 548, 570 (App. 2009) ("It is axiomatic that reconciling conflicting testimony is beyond the scope of appellate review.") (internal quotation marks and citation omitted).

The Family Court found that: (1) Bonnie acquired the funds via inheritance during the parties' marriage; (2) Bonnie expressly classified them as her separate property; and (3) the funds were maintained by sources other than Bonnie or Aaron and were not funded with marital income or property. These findings were supported by substantial evidence in the record. As a result, we conclude that the court did not err in determining the funds to be Marital Separate Property.

On appeal, Aaron argues that, even if the subject inheritance accounts were properly categorized as Marital Separate Property, the Family Court abused its discretion when it failed to deviate from an equal division of the parties' Marital Partnership Property, in light of the substantial amount of Marital Separate Property.[2/] Aaron correctly states that this court has recognized the Family Court's wide discretion to divide and distribute the estate of the parties in a just and equitable

_____

[2/] It does not appear that Aaron made this argument in the proceedings before the Family Court.

manner, which includes the authority to award Marital Separate Property to a non-owning spouse.  See Schiller, 120 Hawai'i at 310-12, 205 P.3d at 575-77.  We are not, however, persuaded that the Family Court abused its discretion by failing to do so in this case.  Aaron argues that both parties worked hard to build their marital partnership assets, so Aaron should reap some benefit from the inheritance that Bonnie received during the marriage, even if it is Marital Separate Property.  The mere existence of such an inheritance does not, without more, mandate deviation from the Marital Partnership model.[3]  We conclude that the Family Court did not abuse its discretion by failing to either award part of Bonnie's Marital Separate Property to Aaron or to award Aaron more than one-half of the parties' Marital Partnership Property.

(2)  Aaron argues that the Family Court erred in failing to find that Bonnie dissipated marital assets in contemplation of divorce.  A reduction of the marital estate during divorce does not necessarily constitute dissipation.  Rather, dissipation occurs when, "during the time of the divorce, a party's action or inaction caused a reduction of the dollar value of the marital estate under such circumstances that he or she equitably should be charged with having received the dollar value of the reduction."  Higashi v. Higashi, 106 Hawai'i 228,

---

[3]    In his Reply Brief, Aaron argues that the Family Court erred in COL 4 when it concluded that:  "There are no valid and relevant considerations sufficient for the court to deviate from the division of the $60,000 inheritance."  First, we note that Aaron does not challenge COL 4 in his points of error. On this basis alone, the argument may be disregarded.  See Hawai'i Rules of Appellate Procedure (HRAP) 28(b)(4).  Nor does Aaron point to where in the record that he argued that this or any part of Bonnie's inheritance warranted a deviation from the 50:50 division of Marital Partnership Property, which included one-half of the appreciation on the $60,000 account that the court concluded was a gift to the marital estate.  It appears that, in the Family Court proceedings, Aaron argued only that Bonnie's inheritances should be treated as marital partnership property, not that her inheritances constituted grounds for deviating from the partnership principles in dividing the parties' partnership assets equally.  We further note that, in his points of error, Aaron does not challenge COL 10 stating: "MSP is awarded 100% to the owner-spouse and 0% to the non-owner spouse"; nor does it appear that Aaron raised this issue below.

241, 103 P.3d 388, 401 (App. 2004). Dissipation is a factual determination. See Schiller, 120 Hawaiʻi at 304-05, 205 P.3d at 569-70 (treating dissipation as question of fact); Ahlo v. Ahlo, 1 Haw. App. 324, 329, 619 P.2d 112, 117 (1980).

Here, the Family Court found that Bonnie expended certain funds for "ordinary and customary household and living expenses," including her son's tuition, room, and board; various airfares; fees for three different attorneys and for three legal matters; and household expenses incident to purchasing and setting up a new home. At trial, Bonnie testified as to various reasons for her expenditures during the divorce. She testified that Aaron ceased making material contributions to the household expenses, and that she used the funds to cover those expenses. She testified that she utilized some of the funds for her living expenses, taxes, and her sons' private school and college expenses. She also traveled between Kauaʻi and Honolulu a number of times for medical treatment. She went on several vacations, just as she and Aaron had done during the marriage. She paid for attorneys' fees in connection with the divorce, a criminal complaint that Aaron initiated, and Aaron's first appeal. Finally, she testified that her separate accounts had "grown and shrunk" over the years due to market forces.

Although Aaron submitted testimony and evidence that could give rise to an inference of dissipation, the Family Court was entitled to weigh the conflicting evidence and make a credibility determination. CSEA v. Doe, 98 Hawaiʻi 58, 65, 41 P.3d 720, 727 (App. 2001). The Family Court's finding that Bonnie used the funds for ordinary and customary living expenses was supported by substantial evidence.

Aaron also argues that the Family Court failed to make adequate findings on the alleged dissipation of marital assets. A trial court's findings are adequate if "they are sufficiently comprehensive and pertinent to the issues to provide a basis for

decision." <u>Wilart Associates v. Kapiolani Plaza, Ltd.</u>, 7 Haw. App. 354, 361, 766 P.2d 1207, 1211 (1988) (internal quotation marks and citation omitted). Conclusory or ultimate findings are insufficient if not supported by the requisite subsidiary findings. <u>Id.</u> However, the trial court is only required to "make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." <u>Doe v. Roe</u>, 5 Haw. App. 558, 565, 705 P.2d 535, 542 (1985) (internal quotation marks and citation omitted). The court does not need to make negative findings of fact. <u>Id.</u> at 566, 705 P.2d at 542-43.

Here, the FOFs explain the Family Court's conclusion, initially set forth in the court's September 24, 2008 Order Denying Defendant's Motion for Pre-Decree Relief, that no dissipation occurred. The court found that Bonnie "expended certain funds during the divorce proceedings." It further found that "[t]he funds were used to pay the usual and customary household and living expenses, <i>e.g.</i>, son's tuition, room, board, airfare from California to Kaua'i, Plaintiff's airfares, attorney's fees for three different attorneys (divorce attorney, criminal defense attorney, and appellate attorney) for three legal matters initiated by Plaintiff, as well as Plaintiff's deposit on her new house and for the cost of setting up a new household." It thus specifically found that Bonnie "did not withdraw marital funds in contemplation of divorce." In sum, the findings were "brief, definite, [and] pertinent" as to the contested issue. <u>Doe</u>, 5 Haw. App. at 565, 705 P.2d at 542.[4]

---

[4] Aaron also asserts, in conjunction with his contention that Bonnie dissipated assets, that the Family Court violated due process by denying his request to lengthen the trial beyond six hours. His arguments in this regard are wholly conclusory, and he cites no authorities for support. <u>See</u> HRAP Rule 28(b)(7) (requiring argument section to contain "citations to the authorities."). We may therefore deem this point waived. <u>Id.</u> In addition, Aaron fails to identify any testimony, evidence, or arguments that he was precluded from presenting to the Family Court.

(3)  Lastly, Aaron contends that the Family Court lacked jurisdiction to enter the February 3, 2009 Post-Decree Order requiring him to make an equalization payment to Bonnie on the grounds that the order modified the Supplemental Decree. Generally, once a party files a notice of appeal, the lower court is divested of jurisdiction to proceed further on the matter. Lowther v. Lowther, 99 Hawai'i 569, 578, 57 P.3d 494, 503 (App. 2002). However, the Family Court retains jurisdiction to enforce its judgments and decrees. Id.; Richter v. Richter, 108 Hawai'i 504, 506-07, 122 P.3d 284, 286-87 (App. 2005).

Here, the Supplemental Decree effectively mandated the parties to perform certain obligations. Aaron was required to buy out Bonnie's share of the marital residence. He failed to do so and remained indebted to Bonnie for her share of the marital property. In the decree, the Family Court reserved jurisdiction "over the parties and their property to enforce and implement the provisions of this decree." When Aaron failed to perform his obligation under the decree, the Family Court had jurisdiction to enforce compliance. The court was merely enforcing specific provisions of the decree, and did not materially alter the outcome of property distribution. See, e.g., Carroll v. Nagatori-Carroll, 90 Hawai'i 376, 978 P.2d 814 (1999); Cain v. Cain, 59 Haw. 32, 575 P.2d 468 (1978).

Aaron argues that, the Family Court materially altered the decree when, in its Post-Decree Order, the Family Court ordered Aaron to offset his share of the marital property against the debt. This arguably differed from the Supplemental Decree, which did not require Aaron to offset Bonnie's share but merely permitted him to do so. However, the decree granted Aaron the opportunity to select various means of buying out Bonnie's share. When Aaron failed to effect any of those means, the Family Court necessarily mandated a form of payment. The Family Court had previously ordered Aaron to deposit Bonnie's share of the equity

into escrow, including in the Bifurcated Divorce Decree, and he failed to comply. The setoff was thus necessary to enforce Bonnie's award of her share of the marital residence.

Aaron in effect argues that because the Supplemental Decree did not require him to set off his share or sell the residence, it did not require him to do anything at all. This runs contrary to the plain import of the property distribution provisions. Although the decree did not set a specific deadline for Aaron to buy out Bonnie's share of the equity, it clearly required him to do so, whatever the means of payment. We conclude that the Family Court did not modify the decree by imposing a deadline; it merely enforced an obligation that had been set forth in both the Bifurcated Divorce Decree and the Supplemental Decree. Accordingly, the Family Court had jurisdiction to issue the February 3, 2009 Post-Decree Order.

For these reasons, we affirm the Family Court's October 7, 2008 Supplemental Divorce Decree re Division of Assets and Debts after Entry of Bifurcated Divorce Judgment, the September 24, 2008 Order Denying Defendant's Motion for Pre-Decree Relief, and the February 3, 2009 Order on Plaintiff's Motion to Compel Defendant to List Marital Residence for Sale.

DATED: Honolulu, Hawai'i, May 11, 2011.

On the briefs:

Peter Van Name Esser
for Defendant-Appellant

Robert M. Harris
Marianita Lopez
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

8